### FIDELITY & DEPOSIT CO. OF MARYLAND v. MUIR.
### No. 5698.

Circuit Court of Appeals, Sixth Circuit.
Nov. 9, 1931.

HICKENLOOPER, Circuit Judge, dissenting.

L. T. Wolford, of Louisville, Ky. (Wm. Marshall Bullitt, R. Lee Blackwell, and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellant.

Ernest Fulton, of Bardstown, Ky. (David A. McCandless, of Louisville, Ky., and Fulton & Fulton and Will H. Fulton, all of Bardstown, Ky., on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

McClaskey, before the Prohibition Act, owned and operated a distillery in Kentucky, which was registered as No. 442 of the Kentucky district. In connection with it, he operated a warehouse, where he kept his manufactured liquor in bond, and of which stored liquor he had sold the most part by virtue of the issue and sale of warehouse certificates. Under such certificates he became the warehouseman of what he had sold, until it should be legally tax paid and withdrawn. After the National Prohibition Act, he continued for two or three years to make withdrawals, which he bottled and shipped under the necessary permits. In May, 1922, there remained in the warehouse only 14 barrels belonging to him, and of the remainder belonging to the warehouse receipt holders, 22 barrels belonged to a man named Ginnocchio. At this time McClaskey made with Morton the arrangements which give rise to this controversy. McClaskey's interpretation is that Morton bought him out and succeeded him in all the bottling and warehouse business which was then being done and which could be carried on; that it was necessary to do this in McClaskey's name because he had a permit and Morton could not get one; and that, accordingly, Morton was to have the use of McClaskey's name wherever necessary; but that McClaskey, in spite of the written contracts to the contrary, retained no actual interest in the business. In the contract between them, and after reciting the details of the arrange-

ment, it was provided that the second party, Morton, "undertakes in due and proper form to indemnify [McClaskey] or to reimburse him against any loss or damage or injury, or against any fine or penalty or assessment that may occur, happen, accrue, or be imposed by reason of any act, omission, default or failure of [Morton] to comply fully and completely with the Internal Revenue or Prohibition Acts, or any law that may now exist or be hereafter enacted by Congress, which would entail or impose any liability of any kind on [McClaskey]." It was further agreed that McClaskey "shall sign all papers as required by the Internal Revenue Law or regulations, for the proper operation of this plant." Thereupon, Morton, as principal, and Fidelity & Deposit Company, as surety, signed the bond running to McClaskey as obligee, the condition of which was as follows: "Now therefore, if the said principal, H. Alfred Morton, shall well and truly perform and discharge all the duties, obligations and liabilities imposed by law or by contract on the said McClaskey as surviving partner of Bodine and Sam McClaskey by reason of his connection with and ownership of said distillery, and shall pay all sums of money, demands, debts and liabilities for which the said Sam McClaskey may be liable by reason of his connection with said distillery and shall pay all internal revenue taxes, penalties, fines and assessments that may be made or levied against the said Sam McClaskey or said distillery property on the whisky therein and shall save the said Sam McClaskey harmless and free from all liability, cost or damage of any kind or character whatsoever, and shall save him harmless and free from all liability by reason of the use and occupancy of said distillery * * * then this obligation shall be null and void; otherwise to remain in full force and effect."

In the subsequent conduct of the business, McClaskey from time to time executed applications for permits to withdraw specific barrels from the warehouse for bottling purposes, and Morton, upon receiving the permits, made the withdrawals in McClaskey's name and did the bottling. It developed that, among the barrels that McClaskey thus obtained a permit to withdraw and which were so withdrawn, were the 22 barrels belonging to Ginnocchio—all without his knowledge or consent. There was thus a conversion by Morton of these 22 barrels. Accordingly, Ginnocchio, who still held the warehouse receipts, brought suit in the court below against McClaskey as for a conver-

sion and recovered the damages for this conversion fixed by the judgment in that case as about $4,400. McClaskey paid the judgment, and brought this suit against the Fidelity Company, the surety in the bond. The court charged the jury that if McClaskey knowingly participated in this conversion, or if he was negligent in signing the application for the permit which made the conversion possible, he could not recover; but if in signing this application, he acted with reasonable care and prudence, then he might recover. The jury ultimately found there was no negligence and returned a verdict for McClaskey.

The further fact should be stated that, during the summer of 1921, McClaskey made repeated efforts to buy these 22 barrels from Ginnocchio, and had sent to the latter a statement of warehouse charges due, in which McClaskey had identified these several barrels by their serial numbers. Further, after this whisky had been withdrawn on McClaskey's application, and bottled and sent to Chicago, Morton undertook a scheme to cut off Ginnocchio's title by pretending to make a sale to enforce warehouse charges, as if the whisky were still in barrels in the warehouse, and at this proceeding an employee of Morton purported to buy the whisky. McClaskey had knowledge of this and participated by signing the notices of sale which Morton prepared—all as if McClaskey were the distillery warehouseman, although McClaskey well knew that the sale was only a pretense.

Upon the undisputed facts, defendant was entitled to an instructed verdict. We doubt whether McClaskey's negligence in furnishing his name to Morton was a controlling consideration, because an obligee, like an insured, is often indemnified even against his own negligence; but, however that may be, we think McClaskey's participation in causing the loss so clearly appears that no liability in his favor arose.

This conclusion depends upon the construction and interpretation of the bond. The contract for the bond clearly contemplated only liabilities which might fall upon McClaskey because of violation by Morton of some federal law or regulation. Although, of course, the parties might voluntarily give a bond which would go beyond the contract therefor, its language should be clear in order to find this greater measure of obligation; but, giving to McClaskey the benefit of all doubts along this line, the condition cannot be broader than to indemnify McClaskey for Morton's failure to discharge any duty im-

posed on McClaskey by contract or by law, as distillery warehouseman; and among these duties would be to keep safely Ginnocchio's whisky. When the bond was drafted, all parties knew that the whisky in the warehouse could not be withdrawn and turned over to Morton without McClaskey's affirmative action, by signing an application for a permit and obtaining that permit from the government in his name and as his act. That the Fidelity Company intended to indemnify McClaskey against damage that would not occur unless through an act which McClaskey must himself first authorize, is most improbable; and we find no language justifying such an inference. There was abundant opportunity for the operation of the bond, as affecting Morton's mere nonfeasance by failure to perform the affirmative duties imposed on him through the contract. In this unlawful withdrawal and conversion of this Ginnocchio whisky, Morton and McClaskey were partners and associates; indeed, McClaskey played the chief part because he offered himself as the screen behind which Morton could and did convert the whisky. There was not merely a negligent permitting of Morton's tort; McClaskey cannot deny that he asked for and received the whisky and turned it over to Morton to be converted and shipped away. This was at least participation by McClaskey.[1] He cannot in that way create in himself a right to recover as for a wrong done to him.

The most charitable view to take is that suggested by McClaskey's counsel—that he signed, in blank, or without reading, whatever papers Morton presented. That cannot relieve him from responsibility for the events which were, and which only could be, set in motion by his own act in getting this permit.

It results that the verdict should have been directed for the defendant, and that there must be a new trial.

Accordingly, the judgment is reversed, and the case remanded for appropriate further proceedings.

HICKENLOOPER, Circuit Judge (dissenting).

I am of the opinion that the judgment of the District Court should be affirmed, and I feel constrained to briefly state the grounds of my dissent. Both the testimony of Mc-

Claskey and the condition of the bond seem to me to indicate with sufficient clearness an intent on the part of McClaskey to turn over the entire distillery warehouse to the control and operation of Morton. Legal difficulties were encountered. The operations to be conducted by Morton might well subject McClaskey to fines and penalties levied by the federal government, and to civil liability to the holders of warehouse certificates. Accordingly, McClaskey demanded a bond to protect himself against these possibilities. It is this bond which forms the basis of the present suit.

The condition of the bond is not only that "Morton shall well and truly perform and discharge all the duties, obligations and liabilities imposed by law or by contract on the said McClaskey, * * *" indicating the substitution of control, but also that Morton "shall pay all sums of money, demands, debts and liabilities for which the said Sam McClaskey may be liable by reason of his connection with said distillery * * * and shall save the said Sam McClaskey harmless and free from all liability, cost or damage of any kind or character whatsoever" (in connection with the business). Thus the surety assumed, in addition to other relationships, the position of guarantor for the payment by Morton to McClaskey of the specific "demands, debts and liabilities" to which McClaskey was subjected by the Ginnocchio judgment. Morton has not indemnified nor reimbursed McClaskey. It is not apparent to me why the surety should not be required to do so in accordance with the letter of the bond.

The defense urged, and the only conceivable defense available to the surety, was that McClaskey had not in truth and in fact severed his connection with and interest in the distillery business, but had so participated in the withdrawal of the Ginnocchio whisky as to bar a right of recovery upon the bond. This would obviously be a defense to a suit for recovery upon a contract bond, for in the event of such participation a breach of contract would not appear. It would also constitute a defense in a suit for breach of an agreement to indemnify McClaskey against *wrongful acts* of Morton, for the acts in which McClaskey participated could not be so far considered Morton's acts nor so far wrongful toward McClaskey as to come within the agreement to indemnify. But it is difficult to see how such participation would defeat McClaskey's right to recover under the stipulation that Morton should assume

---

[1] McClaskey says: "The Ginnocchio whiskey was taken out of bond with my knowledge and consent and by authority of my signature. * * * I cannot say I did and cannot say I did not know it was Ginnocchio's whiskey."

and pay all "demands, debts and liabilities" for which McClaskey should be found liable "by reason of his connection with said distillery." This provision presupposes a veritable continuance of McClaskey's connection with and at least a formal participation in the business, although the exclusive conduct and management was to be substantially turned over to Morton.

This consideration aside, however, it is to be noted that the action was at law. The issue of fraud in retaining a material interest (a partnership) in the conduct of the business was raised by the pleadings. Substantial evidence was introduced to support the contentions of the plaintiff. Under such circumstances the case was properly submitted to the jury and this court is foreclosed as to a re-examination of the question of fact. Had there been no substantial evidence of good faith and honest dealing, perhaps this court would be justified in holding that the only possible inference to be drawn from the facts was that of a fraudulent conspiracy to shift a financial burden from McClaskey and Morton, on the one hand, to the appellant, on the other; but this does not seem to me to be such a case.

Both upon the ground that Morton was primarily responsible for the conversion of the Ginnocchio whisky, that he has not reimbursed McClaskey, and that the appellant is therefore liable as his surety, and the ground that the issue of fact was properly submitted to the jury as supported, on plaintiff's part, by substantial evidence, and we should not therefore now assume to find contrary to the verdict, I am of the opinion that the judgment should be affirmed.